(Henderson, J.,
dissenting).
In sum, the language, context, and history of the EPCA make clear that DOE’s “interpretation goes beyond the limits of what is ambiguous and contradicts what in our view is quite clear.” Whitman, 531 U.S. at 481, 121 S.Ct. 903. Congress has established — and DOE simply chose to ignore — -the means by which DOE could extend its regulatory authority. For these very same reasons, we would also reject DOE’s interpretation at Chevron Step Two.
Because DOE’s interpretation is not entitled to deference, we need not consider petitioners’ related claims.
B.
The foregoing assumes that as a result of DOE’s rulemaking, decorative fireplaces are now regulated as DHE under the EPCA. The dissent, however, has adopted DOE’s untenable fiction that the agency “did not in fact regulate purely decorative fireplaces.” Dissent Op. at 509 (emphasis in original). Specifically, the dissent acknowledges that DOE included decorative fireplaces “in a broad definition” of DHE before “exempting them from the energy-conservation standards,” but finds no “principled objection to this technique” since “[t]he end result is the same as if the rule first defined [DHE] to exclude decorative fireplaces.” Id. at 511.[9] We very strongly disagree.
Even if we were to assume that there is no effective difference between defining *508 DHE negatively to exclude decorative fireplaces or defining the safe harbor positively to include them, this higher order observation does not change what is clear on present facts: DOE stands in a position of control. With the foreknowledge that decorative fireplace manufacturers would have to comply or face onerous, potentially unreachable energy standards, DOE could at any time manipulate the safe harbor criterion to compel different or broader compliance. This is the essence of regulation. The petitioners and their four lawsuits— four more than necessary for “unregulated” parties — certainly agree.
More fundamentally, perhaps, we take issue with the dissent’s suggestion that the specter of “regulation” somehow disappears because DOE can, without formally bringing decorative products into the regulatory fold, indirectly define that class of products by gerrymandering its definition of DHE. The means may change, but the ultra vires end remains the same. Agencies don’t get a free pass simply because they’ve kept their definitional house in order. If faced with different facts, we suspect the dissent might agree.
Imagine DOE interpreted DHE to include the universe of what we would traditionally call hot tubs, but created a safe harbor in which any device that (1) held water and (2) had less than four water jets would be excluded as a “hot tub” from DHE’s unattainable energy standards. Alternatively, imagine DOE defined DHE to include everything except devices that (1) hold water and (2) have less than four water jets. Under either approach, all water-holding tubs with four or more water jets — of which there are countless on the market — would be deemed subject to DHE requirements. Would we say then that hot tubs have escaped regulation? No, certainly not. As a direct result of DOE’s interpretive machinations, a sizeable number of what had long been regarded as hot tubs would now be regulated as DHE.[10] The only thing that escapes regulation is what the agency has declared to be a hot tub, regardless of whether or not it comports with the historical- or industry-based understandings of the term. And there’s the hitch. With hot tubs as with decorative fireplaces, an agency supposedly without authority over that product class has not only altered and narrowed the accepted contours of that class, but holds the manufacturers hostage with the threat of future modifications.
True, this discrepancy might be more easily spotted in the hot tub hypothetical than here since decorative fireplaces are more closely related to traditional DHE, but the danger of such backdoor regulation is no less real. Consider the fourth safe harbor criterion, the requirement that products sold after January 1, 2015 must not include “a standing pilot light or other continuously-burning ignition source.” 2011 Final Rule at 71,859. By DOE’s admission, 38 percent of decorative fireplaces “would need to be redesigned to eliminate” these features. Id. at 71,849. Where more than a third of the products on the market would have to be reworked to comply with the safe harbor, it seems disingenuous to suggest DOE has not already altered the status quo.
Worse yet, to the extent manufacturers will have to redesign their products to function without standing pilot lights, DOE will have effectuated yet another workaround of statutory limits. “Energy conservation standards” under the EPCA take two forms: performance standards *509 that “prescribe[ ] a minimum level of energy efficiency or a maximum quantity of energy use,” and design requirements. 42 U.S.C. § 6291(6). Whereas Congress authorized DOE to impose performance requirements on all covered products, it specifically limited its authority to impose design requirements to just a handful of product classes. Id. § 6291(6). Emphatically, DHE and the catch-all class, § 6292(a)(20), are not among them.
In response, DOE maintains in its briefing that the mere mention of an “energy-use characteristic[ ],” including standing pilot lights, will not “transform[ ] the definition into a design requirement.” Resp’t Br. at 44. But this is not what DOE argued in the 2011 Final Rule. Rather, DOE responded to the objection that the EPCA “does not provide DOE with the authority to impose design requirements,” 2011 Final Rule at 71,847, by stating that it was “not mandating a design requirement for primarily decorative hearth products, because meeting the exclusion criteria is completely optional and at the manufacturers’ discretion,” id. Having conceded that the ban was a design requirement — though not a mandatory one — the agency’s present argument is not an “amplified articulation” of its rule-making position, Local 814, Int’l Bhd. of Teamsters v. NLRB, 546 F.2d 989, 992 (D.C.Cir.1976), but an entirely unavailing post hoc rationalization. See Motor Vehicle Mfrs. Ass’n. of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).
IV. Conclusion
The dissent may well be correct that “the distance between two points on the vertical axis is the same whether one measures down or up,” Dissent Op. at 511 (quotation marks omitted), but it is likewise so that “a straight line is any distance between two places” and a circle but “a round straight line with a hole in the middle.” Mark Twain, English as She Is Taught 15 (Mut. Book Co.1900). Clearly the phrase “Vented hearth heater” did not encompass decorative fireplaces as that term is traditionally understood. In light of DOE’s tightly limned regulatory circle, we vacate the entire statutory definition of “Vented hearth heater” and remand for DOE to interpret the challenged provisions consistent with this opinion. If the Department still wishes to regulate decorative fireplaces, it must do so through the EPCA’s catch-all provision, § 6292(a)(20).

So ordered.

. Assuming arguendo the dissent is correct that DOE could effectuate the same ends without formally regulating decorative fireplaces, this is not what DOE did. The Department's 2011 Final Rule unequivocally stated:
DOE believes that regardless of whether the product is intended to provide only aesthetic appeal, by design, the product will generate heat due to the presence of the flame, and some of that heat will be transferred to the space. Indeed (as discussed further in section III), many interested parties have conceded that vented hearth products intended primarily for decorative use and vented gas log sets are an effective supplemental or emergency heat source, providing further justification for their inclusion as a type of covered direct heating equipment.
2011 Final Rule at. 71,839.

. Presumably, hoi tub manufacturers would rush to redesign their products to comport with the four water jet maximum. Should DOE later reduce the figure to three — or add new requirements — the manufacturers would have no choice but to comply.